**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AUTOMOTIVE FINANCE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>DZ MOTORS, LLC, et al.,<br><br>Defendants. | Civil Action No. 16-7955 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Plaintiff Automotive Finance Corporation's ("AFC") tort claim against Defendant Raritan Bay Federal Credit Union ("Raritan Bay" or the "Credit Union") for conversion. The Court held a four-day bench trial from December 14 to 17, 2020. On April 9, 2021, the Court entered judgment in favor of AFC for its conversion claim as to the sale of a 2015 Bentley, VIN SCBFS8ZA0FC049904 (the "Bentley"). (ECF No. 180.) Following entry of judgment in AFC's favor, the parties filed several post-judgment motions. Those motions included AFC's Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e). (ECF No. 181.) Raritan Bay opposed (ECF No. 186), and AFC replied (ECF No. 188). For its part, Raritan Bay moved for a new trial (ECF No. 183), as well as to stay execution of judgment under Federal Rule of Civil Procedure 62(a) (ECF No. 190). AFC opposed those motions (ECF Nos. 184, 191), and Raritan Bay replied (ECF Nos. 189, 195). The Court has carefully considered the parties' submissions and decides these matters without oral argument

pursuant to Local Civil Rule 78.1. For the reasons below, the Court grants AFC's motion and denies Raritan Bay's motions.

## I.   **BACKGROUND**

The parties are familiar with the factual and procedural history of this matter and, therefore, the Court recites the facts necessary to resolve the instant motions. DZ Motors, LLC ("DZ Motors" or the "Dealership") is a limited liability company of New Jersey that was previously in the business of selling high-end used luxury motor vehicles. *Auto. Fin. Corp. v. DZ Motors, LLC*, No. 16-7955, 2021 WL 1380605, at *1 (D.N.J. Apr. 9, 2021). Dmitriy Zholobov was the principal and owner of DZ Motors. *Id.* DZ Motors obtained floor plan financing from AFC to purchase the vehicle inventory it held out for retail sale to the public. *Id.* at *2. As a part of this financing arrangement, AFC held a lien and security interest in the Dealership's vehicle inventory. *Id.* Under the terms of the agreement, once AFC made an advance to DZ Motors for the purchase of a particular vehicle, DZ Motors would forward AFC the title of the financed vehicle. *Id.* Next, when DZ Motors sold the vehicle, the Dealership would repay AFC the loan balance attributable to that vehicle. *Id.* At that point, AFC would return the vehicle's title to DZ Motors for forwarding to the purchasing customer. *Id.*

On May 8, 2015, DZ Motors purchased the Bentley from another dealership with an advance issued by AFC pursuant to the floor plan. *Id.* at *3. As the Court noted in its prior findings of fact and conclusions of law, at trial, "there was conflicting evidence as to whether DZ Motors purchased the Bentley as inventory for resale, or whether the dealership purchased the vehicle for the personal use of its owner and principal, Dmitriy Zholobov." *Id.* at *3. Ultimately, the Court found that "the Bentley was at all times relevant DZ Motors's inventory" and that AFC's secured interest in the vehicle took priority over any secured claim Raritan Bay might have had in the vehicle. *Id.* at *10-11.

In rendering a decision in AFC's favor, the Court credited the trial testimony of Anthony Middleton, Senior Corporate Investigator for AFC. *Id.* at *3, *10. Among other things, Middleton testified that "lot audits confirmed that the Bentley was consistently on the lot—making the vehicle inventory under the terms of the [financing agreement]." *Id.*; *see also id.* at *2 (finding that under the terms of the financing agreement "[a]ll vehicles located at [DZ Motors's] place of business constitute inventory for resale in the ordinary course of Dealer's business unless the vehicle is plainly marked otherwise." (alterations in original) (citations and internal quotation marks omitted)).

As Middleton testified, AFC monitors dealerships through "lot audits" performed by an affiliate company, AutoVin. (Trial Tr. 29:6-8, 30:14-20 (explaining that AutoVin is "a sister company. They just do inventory audits.").) AFC provides AutoVin with a list of inventory it expects to be on the lot for sale. AutoVin then visits the dealership and advises AFC of which vehicles it located at the dealership lot. (Trial Tr. 29:6-31:5 ("[T]he information from the verification is electronically provided back to AFC.").) AFC then works with the dealership to ascertain the status of any missing units. (Trial Tr. 30:8-11.) The normal lot audit process occurs every thirty to forty-five days. (Trial Tr. 32:15-19.) Middleton testified that from the time DZ Motors purchased the Bentley in May 2015, lot auditors only failed to confirm the Bentley was on the lot for sale "once or twice." (Trial Tr. 33:1-4, 39:13-25; *see, e.g.*, Trial Tr. 112:1-114:6 (describing the May 30, 2015, September 20, 2016, and October 5, 2016 lot audits as instances where the Bentley failed a lot audit).) Usually, AFC's New Jersey Branch "was able to later verify, via [a] photo, showing that it was back on the lot." (Trial Tr. 33:5-14.) At no point did Raritan Bay make a specific, contemporaneous objection to this testimony on hearsay or other grounds.

During later portions of his testimony, the parties questioned Middleton on a summary excel spreadsheet he created based on his review of "AFC's records of the results of the audits on the Bentley." (*See, e.g.*, Trial Tr. 111:1-9 (redirect); Trial Tr. 84:12-86:16 (cross-examination).) While reviewing that summary chart, on redirect, Middleton again testified that on September 20, 2016, the Bentley failed the lot audit (Trial Tr. 112:1-5), but that on other occasions, DZ Motors received a passing grade for its audits. (Trial Tr. 111:7-13.) Once again, Middleton gave this testimony without a specific, contemporaneous objection from Raritan Bay. (*See id.*) Raritan Bay did, however, repeatedly object to the admission of Middleton's compiled lot audit summary chart into evidence (except for the limited purposes of impeachment). (*See, e.g.*, Trial Tr. 84:14-86:15, 207:7-19.) The Court ultimately ruled in Raritan Bay's favor and held that the summary chart should "come in only to the extent that it was testified to and cross-examined by Mr. Middleton. . . . So there is a glimpse of it that will be in there. No further examination, no further elaboration." (Trial Tr. 216:12-15.) The Court continued, holding that Raritan Bay "did cross-examine Mr. Middleton with regard to this document, so I'm going to allow that testimony to come in." (Trial Tr. 216:16-18.)

In addition to testifying about AFC's lot audit records, Middleton testified to AFC's curtailment extension policies. Under the terms of the financing agreement, the "curtailment date" was "that certain date at the end of the [p]eriod when all obligations concerning or relating to an item of [p]urchase [m]oney [i]nventory become due and payable." *Auto. Fin. Corp.*, 2021 WL 1380605, at *4 (alterations in original). Regarding the curtailment extensions, "AFC require[d] photos of a vehicle at the time a curtailment extension request was made." *Id.* (alterations in original). Middleton explained that "when there's an additional curtailment requested, you request a photo to show that unit is still in the lot and available for sale." *Id.* In its April 9, 2021 Judgment,

4

the Court cited the testimony of both Middleton and another official, AFC's former New Jersey Branch Manager Michael Buzzanca,[1] in finding that DZ Motors took seven photos and provided them to AFC in connection with its curtailment extension requests. (Trial Tr. 33:19-25, 129:18-134:7.) Again, Defendants did not lodge a contemporaneous and specific objection to any of this testimony.

## II.   DISCUSSION

### A.   Raritan Bay's Motion for a New Trial Pursuant to Rule 59(a)

Raritan Bay seeks a new trial under Federal Rule of Civil Procedure 59(a), arguing that there was "substantial error in the admission or exclusion of evidence." (Raritan Bay's Mot. for New Trial Moving Br. 13 (quoting *Marder v. Conwed Corp.*, 75 F.R.D. 48, 54 (E.D. Pa. 1977)), ECF No. 183-1.) Raritan Bay maintains that Middleton's reliance on audit summaries and curtailment extension records were "hearsay" and perhaps "hearsay upon hearsay." (*Id.* at 14.)

Following a civil bench trial, district courts may grant a new trial "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed. R. Civ. P. 59(a)(1)(B). "A movant for a new trial faces a heavy burden; the court may order a new trial in a non-jury action if the court committed a manifest error of law or a mistake of fact, but a judgment should not be set aside except for substantial reasons." *Blackiston v. Johnson*, No. 91-5111, 1995 WL 563834, at *2 (E.D. Pa. Sept. 21, 1995) (citing *Gidlewski v. Bettcher Indus., Inc.*, 619 F. Supp. 87, 91 (E.D. Pa. 1985), *aff'd*, 779 F.2d 42 (3d Cir. 1985)), *aff'd*, 91 F.3d 122 (3d Cir. 1996).

As a preliminary matter, the Court notes that Raritan Bay objected to the admission of the summary spreadsheet of audit results created by Middleton. (*See, e.g.*, Trial Tr. 84:14-86:9,

---

[1] Middleton testified that DZ Motors was "for all intents and purposes . . . Mike Buzzanca's account to keep an eye on" and that he was "the one that was minding the store." (Trial Tr. 63:22-25.)

5

207:7-19.) Raritan Bay did not, however, object to Middleton's testimony about the substance of the audit findings themselves, or Middleton's testimony about the purpose of photographs admitted at trial. (*See, e.g.*, Trial Tr. 29:5-31:5, 33:1-4, 39:13-25 (explaining that, based on his review of AutoVin "information from the verification," which was "electronically provided back to AFC" lot auditors only failed to confirm the Bentley was on the lot for sale a handful of times), 33:19-34:3 ("These are photos required either for a curtailment or to code clear a lot audit showing the unit" and that the photo was "taken by DZ Motors and provided to AFC").)

"'If a party fails to object in a timely fashion, the objection is waived' and the admission of evidence is reviewed only for plain error." *N.J. Mfrs. Ins. Grp. v. Electrolux Home Prods, Inc.*, No. 10-1597, 2013 WL 4494941, at *5 (D.N.J. Aug. 20, 2013) (quoting *Gov't of V.I. v. Archibald*, 987 F.2d 180, 184 (3d Cir. 1992)); *see, e.g., Feesers, Inc. v. Michael Foods, Inc.*, No. 04-576, 2008 WL 4890030, at *1 (M.D. Pa. Nov. 12, 2008) ("[The] [d]efendants waited until after the exhibits and testimony were entered into evidence and [the] [p]laintiff neared the close of its case to object. Thus, [the] [d]efendants waived their objection to this evidence."); *Spencer v. Biggins*, 2014 WL 1796606, at *4 (M.D. Pa. May 6, 2014) ("[The] [p]laintiff never raised any objection to the testimony of [the witness] during trial and, therefore, [the] [p]laintiff has waived his right to object in a post-trial motion. Consequently, the admission of [the witness's] testimony can only be reviewed for plain error."). "The requirement of a timely objection promotes judicial economy by enhancing the trial court's ability to remedy the asserted error." *Archibald*, 987 F.2d at 184. Because Raritan Bay failed to make contemporaneous objections to the testimony from Middleton that it now challenges, the Court finds that the objection is waived and not a proper basis for a new trial. *Cf. Leonard v. Stemtech Int'l, Inc.*, 834 F.3d 376, 401 (3d Cir. 2016) (affirming a district court's denial of a Rule 59 motion for a new trial because "the [d]istrict [c]ourt clearly ruled that

foundation objections needed to be raised when the allegedly objectionable exhibits were offered at trial, and [defendant] failed to lodge a contemporaneous objection."); *see also* Fed. R. Evid. 103(a) ("[A] party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party" and the party "timely objects or moves to strike" and "states the specific ground").

Even reviewing the trial record for plain error, the Court finds no clear indication of error requiring it to strike Middleton's testimony. Upon review, it appears that the data on which Middleton relied could have been admissible under the business records exception. (*Compare* Trial Tr. 29:6-31:5 (explaining that "the information from the verification is electronically provided back to AFC"), *and* Trial Tr. 111:1-9 (Middleton explaining that his knowledge of the results of DZ Motors's lot audits is based on his review of "AFC's records of the results of the audits on the Bentley"), *with Feesers, Inc.*, 2008 WL 4890030, at *3 ("[T]he underlying data falls within the hearsay exception for business records. As [the company's chief financial officer] explained, this data was drawn from [the company's] customer database, which is kept by [the company] in the ordinary course of business" (citing Fed. R. Evid. 803(6))).) Raritan Bay cites no authority to the contrary.

**B.    Raritan Bay's Motion for a New Trial Pursuant to Rule 60(b)**

Raritan Bay also moves for a new trial under Federal Rule of Civil Procedure 60(b)(3). (Raritan Bay's Mot. for New Trial Moving Br. 1.) The Credit Union alleges a litany of discovery improprieties by AFC. Rule 60(b) provides that the "court may relieve a party . . . from a final judgment, order, or proceeding" due to "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)" and "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(2), (3). "Importantly, the movant in a Rule 60(b) motion

7

carries a heavy burden, as Rule 60(b) motions are viewed as extraordinary relief which should be granted only where extraordinary justifying circumstances are present." *Kiburz v. Sec., U.S. Dep't of Navy*, 446 F. App'x 434, 436 (3d Cir. 2011) (internal quotation marks omitted). A party's refusal to "produce evidence requested in discovery *can* constitute Rule 60(b)(3) misconduct." *Floorgraphics Inc. v. News Am. Mktg. In-Store Servs., Inc.*, 434 F. App'x 109, 112 (3d Cir. 2011). The burden, however, is on Defendant to produce clear and convincing evidence of Plaintiff's discovery misconduct. *Id.* at 111. "Whether there has been discovery misconduct warranting relief under Rule 60(b)(3) requires not only consideration of the request propounded, but also the response by one's adversary, and whether the moving party resorted to a motion to compel or a request for sanctions as permitted by the federal rules." *Id.* at 112.

Here, Raritan Bay makes a litany of accusations regarding AFC's supposed failure to appropriately respond to discovery requests throughout this litigation. (Raritan Bay's Mot. for New Trial Moving Br. 2-3.) Raritan Bay alleges that "[t]he majority of these documents and [electronic information] were . . . disclosed, for the first time, at trial." (*Id.* at 3.) The Credit Union goes on to list a variety of documents allegedly withheld, including documentation relating to the AutoVin lot audits and certain electronic information and documents contained in "AFC's Paperless Auto Workflow" that were referenced in the testimonies of Middleton and Buzzanca regarding lot audits and curtailment extensions. (*Id.* at 4-7.) Raritan Bay maintains that it was "prejudiced and unable to full[y] and fairly explore these issues and cross-examine the witnesses on their testimony respecting these issues and present a defense as to whether the Bentley was inventory" without full and appropriate discovery in this case. (*Id.* at 12 (citing *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983) ("[The] plaintiff's failure to provide information uniquely within his knowledge

8

effectively foreclosed defendant from presenting her claim . . . at trial. A court should not lightly countenance such an abuse of the discovery process.").)

AFC objects to Raritan Bay's characterization of its discovery responses. AFC's opposition recounts several discovery disputes between the parties. (AFC's Mot. for New Trial Opp'n Br. 9-11, ECF No. 184.) AFC argues that to the extent Raritan Bay lacked access to allegedly withheld documents, that deprivation resulted from Raritan Bay's failure "to conduct any depositions in this case, . . . to pursue resolution to AFC's objections to its discovery requests, and . . . to serve additional discovery requests after the filing of the Second Amended Complaint." (*Id.* at 7.)

At bottom, although Raritan Bay alleges misconduct in the discovery process, it does not assert that it formally moved to compel or otherwise sought sanctions against AFC for its alleged failures to produce relevant discovery. Indeed, Raritan Bay never challenged AFC's alleged failure to respond to discovery requests "by filing a motion to compel or a motion for sanctions." *LG Elecs. USA, Inc. v. Whirlpool Corp.*, 798 F. Supp. 2d 541, 569 (D. Del. 2011). Having failed to employ the standard tools by which adversaries seek to compel discovery, Raritan Bay now seeks the extraordinary remedy of a new trial after the Court has already expended considerable resources trying this matter to judgment during the COVID-19 pandemic. Here, Raritan Bay's "failure to pursue a more specific response to its discovery requests precludes a finding of discovery misconduct by clear and convincing evidence sufficient to warrant relief under Rule 60(b)(3)." *Id.* (citing *Floorgraphics*, 434 F. App'x at 112). And even if AFC's actions constituted misconduct, "the evidence of record fails to support" Raritan Bay's "contention that it was precluded from fully and fairly presenting its case." *Id.* Rather, as AFC persuasively argues, it appears that any challenges in fully presenting its case at trial may well have been attributed to Raritan Bay's own failures. *Id.*

9

### C. Motion to Alter or Amend Judgment Pursuant to Rule 59(e)

AFC moves to amend or alter the Court's April 9, 2021 Judgment in its favor so as to include an $18,833.67 award of interest for its successful conversion claim. AFC invokes New Jersey Court Rule 4:42-11(b), which provides that "the court shall, in tort actions . . . include in the judgment simple interest . . . from the date of the institution of the action or from a date six months after the date the cause of action arises, whichever is later . . . provided that in exceptional cases the court may suspend the running of such prejudgment interest." R. 4:42-11(b).[2] "Application of New Jersey's prejudgment interest rule is automatic in verdicts awarding non-economic damages, unless the court finds that the case is among the 'exceptional cases' warranting suspension of the running of such prejudgment interest." *Hayes v. Cha*, 338 F. Supp. 2d 470, 513 (D.N.J. 2004).

Raritan Bay only partially opposes the motion and seeks a $5,880.82 reduction in the amount of prejudgment interest AFC should be awarded. (Raritan Bay's Mot. to Amend. J. Opp'n 1, ECF No. 186.) The Credit Union argues that this matter was ready for trial as early as January 27, 2020, and might have been tried well before the Court's April 9, 2021 Judgment but for AFC's request to mediate this matter. (*Id.*) Accordingly, Raritan Bay asserts that any interest award should exclude 265 days of time during which this matter was stayed. (*Id.* (citing *Dall'Ava v. H.W. Porter Co.*, 488 A.2d 1036, 1038 (N.J. App. Div. 1985)).) The Court does not agree that a routine request for mediation transforms this matter into an exceptional case warranting suspension of the running of prejudgment interest similar to *Dall'Ava*. Unlike *Dall'Ava*, this is not a mass tort case closely related to other pending cases in which several other pending suits caused a co-defendant to become insolvent. *See* 488 A.2d at 1038. In those circumstances, a stay was instituted to "assess

---

[2] The Court previously held that New Jersey's substantive law is applicable to this dispute. *Auto. Fin. Corp.*, 2021 WL 1380605, at *8.

the effect of the bankruptcy filing on the disposition of pending suits." *Id.* Here, however, $180,000 was being actively "withheld and used by defendant" following its unlawful conversion from AFC. *Id.* Interest in this case is "fair reimbursement to plaintiff." *Id.*

Accordingly, for the reasons stated in AFC's moving brief, the Court will calculate prejudgment interest in this case from May 24, 2018, the date on which the Second Amended Complaint alleging conversion was filed by AFC. The Court will amend its initial judgment to award AFC prejudgment interest in the amount of $18,833.67.

### D. Motion to Extend Stay of Execution of Judgment

Under Federal Rule of Civil Procedure 62, Raritan Bay also moves for a stay of the execution of the Court's April 9, 2021 Judgment without bond or security during "post-trial motions and subsequent appeals." (Raritan Bay's Stay Br. 1, ECF No. 190-1.) Raritan Bay argues that "[i]t is impractical and unnecessary to have money exchange hands between the parties on multiple occasions following motions and appeals, when instead the Court can extend the Stay of Execution pursuant to Fed. R. Civ. P. 62(a) in the interest of all parties." (*Id.* at 2.)

Rule 62(a) provides for a thirty-day automatic stay following entry of judgment in a case. Fed. R. Civ. P. 62(a). As AFC notes, however, based on a plain reading of the Rule, the automatic stay expired thirty days from April 9, 2021, in May 2021, one month prior to Raritan Bay's instant June 9, 2021 motion.

In any case, "[w]hether a court will issue a stay is a question of judicial discretion that depends on the circumstances of the case before the court." *Druding v. Care Alternatives*, No. 08-2126, 2019 WL 5957403, at *2 (D.N.J. Nov. 13, 2019). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 433-34 (2009)). The Court is guided by four factors in deciding whether to issue a stay:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken*, 556 U.S. at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

Raritan Bay's three-page moving brief does not address these factors in any fashion whatsoever. (*See generally* Raritan Bay's Mot. for Stay Br.) After AFC's opposition brief noted this deficiency, in reply, Raritan Bay argued that it can demonstrate a strong likelihood of success on the merits based on the arguments made in its Motion for a New Trial. (*See* Raritan Bay's Mot. for Stay Reply Br. 4, ECF No. 195.) But courts in this District routinely refuse to consider arguments raised for the first time on reply because adversaries have "no opportunity to respond to newly minted arguments contained in reply briefs." *Bayer AG v. Schein Pharm., Inc.*, 129 F. Supp. 2d 705, 716 (D.N.J. 2001). Even if Raritan Bay had raised this argument initially, the Court has already considered and rejected this argument for the reasons discussed above. Accordingly, Raritan Bay has failed to meet its burden of demonstrating that a stay of judgment is warranted, and its motion is denied.

### III. **CONCLUSION**

For the reasons set forth above, the Court will amend its April 9, 2021 Judgment and deny Raritan Bay's Motion for a New Trial and Motion for a Stay of Judgment. The Court will enter an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE